**Shirley Ann Wright TURNER et vir,**
**Appellants,**

**v.**

**CITY OF BAYTOWN et al., Appellees.**

No. 1023.

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Nov. 20, 1974.

Thomas D. McManus, Flowers & McManus, Channelview, for appellants.

Neel Richardson, Baytown, for appellees.

TUNKS, Chief Justice.

This suit was brought by a city policewoman for back pay based on alleged sex discrimination. She appeals from a take-nothing judgment entered by a trial court sitting without a jury.

Appellant, Shirley Ann Wright Turner, was employed by the City of Baytown, appellee, as a female member of its police department on April 28, 1964, pursuant to the provisions of the state civil service statute and of the City's civil service rules. Vernon's Tex.Rev.Civ.Stat.Ann. art. 1269m (1963). She successfully completed a six month's probation period and became a police department employee with civil service protection. She has continued to hold the same position with the department up to the present date.

On February 27, 1970, appellant, joined pro forma by her husband, filed suit against the City of Baytown, its mayor, city manager, chief of police, civil service commission chairman, and city council members. The petition alleges that Shirley Turner's duties as a policewoman have been substantially the same as those performed by persons classified as "patrolman," and that the difference in salary between the two positions is based solely on sex, in violation of the laws and Constitutions of the United States and the State of Texas. Appellants seek $21,227 in damages, which is the difference between the salary Turner received from the City from April 28, 1964, through April 30, 1973, and the salary a patrolman received from the City during this same period of time.

After a non-jury trial, judgment was entered that appellants take nothing by their suit, and notice of appeal was made in open court. The trial court made findings of fact that the civil service classifications "policewoman" and "patrolman" are different positions with substantially different duties, that Turner's duties included those which would have been performed by a meter maid, and that she has never applied for the position of patrolman nor for advancement. The court held as conclusions of law that the two City ordinances setting up the classifications "patrolman" and "policewoman" are valid and not discriminatory, that Turner is a classified policewoman and is paid a salary assigned by the City for this classification in its yearly appropriations, and that paying a classified policewoman a salary different from that of a patrolman is not violative of the laws and Constitutions of the United States and the State of Texas.

By their points of error two and four, appellants contend that the trial court erred as a matter of law in holding that the two City ordinances creating the classifications of "policewoman" and "patrolman" were not discriminatory, and in holding that the City's action in paying a lower salary to a policewoman was not violative of the laws and Constitutions of the United States and of Texas. In effect appellants argue that there was no evidence to support a finding that Turner's job was different from that of a patrolman; and that, therefore, there was no basis upon which the trial judge could have upheld the difference in salary paid by the City to

those employees who were classified as "patrolmen" and to appellant, who was classified as a "policewoman." We must uphold the trial court's findings of fact and conclusions of law if there is any evidence to support them.

■ The ordinances setting up the classifications "patrolman" and "policewoman" were offered into evidence. Although the distinguishing characteristics of work are identical in both ordinances, there are sixteen examples of work listed for a patrolman and only eight for a policewoman. Although these examples are only descriptive and do not exclude others not mentioned, they are at least some evidence that the two job classifications entail different duties.

The deposition testimony of former police chief Blair Mann established that appellant was never assigned to perform any of the following duties which patrolmen were assigned: administer first aid at the scene of a crime; investigate a felony; gather evidence; obtain witnesses; make arrests; provide escorts to banks, businesses, military convoys, and funerals; investigate automobile accidents; serve warrants and subpoenas; or act as plain clothes detective. The present police chief, John Wilkinson, testified similarly in comparing the duties of patrolmen with those of appellant. He further stated that the duties Turner performed which are also listed in the ordinance as duties of patrolmen only are duties which normally would be performed by any peace officer. Wilkinson denied that appellant's duties are substantially the same as those of a patrolman. He estimated that a patrolman would spend approximately ten to twenty percent of his time enforcing the traffic laws, but that appellant's primary duty was "parking enforcement." Sergeant Donald Baker, appellant's immediate superior, testified that he is in charge of six other people, all of whom are unclassified employees. Regard-

ing her assigned duties as a policewoman, Baker testified as follows:

Well, her duties are to work the downtown area, write tickets on parking meters, work the school crossings when we have patrolmen that are sick, and really to assist us and myself in any way we need her.

He testified that the primary duties of patrolmen were to ". . . work accidents, make disturbance calls, make theft reports, burglary reports, and things like that." He said that patrolmen were on call at all times to answer disturbances and calls relating to the commission of crimes, but that appellant was not. There was also testimony from two patrolmen describing their work, which is further evidence of a substantial difference between the duties of a patrolman and those of a policewoman.

■ In view of the ample evidence that the duties of a policewoman are substantially different from those of a patrolman, that appellant applied for and was employed to fill a position under the existing classification "policewoman," and that she has never applied for or been denied employment as a patrolman, we hold that the two ordinances setting up the classifications "patrolman" and "policewoman" are valid and non-discriminatory and that there is no showing of a violation of appellant's rights to equal protection under the United States and Texas Constitutions. Appellants' points of error two and four are overruled.

■ By their points of error three and five, appellants contend that the trial court erred as a matter of law in concluding that the City has assigned a salary to the classified position held by Turner in its yearly appropriations and that she is not entitled to recover additional wages. They argue that in the absence of an ordinance fixing the salary for Turner's classified

position, she was entitled to that salary paid for the classification "patrolman."

In the first place, we hold that the trial court was correct in its conclusion that the annual appropriation ordinances enacted by the City, which assigned a salary to the position held by Turner, were ordinances fixing a salary for her position as required by Tex.Rev.Civ.Stat.Ann. art. 1269q, § 3 (Supp.1974–75) (formerly, Tex.Penal Code Ann. art. 1583–2). In those appropriations, her position was referred to variously as "policewoman," "meter maid" or "policeman." However, she was the only person holding the position referred to during the time in question. It was the testimony of the city officials that the appropriation so variously referred to were intended to apply to her classification. Furthermore, she is hardly consistent in arguing that the absence of a general ordinance fixing her position's salary entitles her to that salary fixed for the classification of "patrolman." There was no general ordinance fixing a minimum salary for a patrolman. That classification's salary was also set only by the annual appropriation ordinances.

Tex.Rev.Civ.Stat.Ann. art. 1269q, § 1 and its predecessor, Tex.Penal Code Ann. art. 1583–2, provide for minimum salaries to be paid those city policemen covered by them. Also, in 1962 the voters of the City of Baytown voted to increase the minimum salary of its policemen by $45 per month. If there were no ordinance of the City of Baytown fixing Turner's salary, she would be entitled to the minimum salary fixed by article 1269q, plus $45 a month. *See* City of San Antonio v. Handley, 308 S.W.2d 608 (Tex.Civ.App.—San Antonio 1957, writ ref'd). The uncontroverted facts show that she has at all times since her employment received more than that minimum salary.

The judgment of the trial court is affirmed.